**The STATE of Texas, Appellant,**

v.

**Eloy GUZMAN and Blanca Estella Guzman, Appellees.**

Nos. 13–95–525–CR, 13–95–527–CR.

Court of Appeals of Texas,
Corpus Christi.

Feb. 6, 1997.

Discretionary Review Granted
June 18, 1997.

Thomas L. Bridges, District Attorney, Anita O'Rourke, Asst. District Attorney, Sinton, for Appellant.

James D. Granberry, Corpus Christi, for Appellees.

Before SEERDEN, C.J., and DORSEY and CHAVEZ, JJ.

## OPINION

DORSEY, Justice.

The State of Texas appeals from a ruling of the trial court suppressing all evidence obtained through a seizure and search of appellees Eloy and Blanca Estella Guzman's [1] truck in the State's case against them for third degree felony possession of marihuana.[2] We affirm.

Appellees were stopped on U.S. Highway 77 north of Sinton, Texas by Department of Public Safety Trooper Jerry Byrd when he noticed that the windows of their truck appeared to be too darkly tinted. Trooper Byrd spoke with Eloy Guzman, the driver of the truck, who told him that Guzman and his family were moving to Houston to find work and to live with Guzman's brother. Mrs. Guzman, the truck owner, told Byrd that she too was unemployed, and that they were going to live with her sister. Trooper Byrd noticed that one of the bolts holding the truck bed onto the frame appeared to have been disturbed. He also learned that the truck had been purchased only days before. Trooper Byrd saw a cellular telephone in Mrs. Guzman's purse and a portable citizens-band ("CB") radio on the floorboard of the truck.

Due to the conflict in appellees' stories, the appearance of the bolt, and the presence of both a cellular telephone and a portable CB radio, Trooper Byrd suspected that contraband was concealed in the vehicle. He informed Mr. Guzman of his suspicions and obtained written consent from Mr. Guzman to search the vehicle and its containers and contents. The consent form listed the place of the search as "SO Sinton."[3] Although Mrs. Guzman was listed as the truck owner on the paper "buyer's tag" visible on the vehicle, she was not asked for consent to search. Trooper Byrd looked under the bed of the vehicle and determined that all of the bolts holding the bed to the frame appeared to have been recently disturbed. No other search was performed on the roadway.

Trooper Byrd told Mr. Guzman that he needed to take a closer look at the truck. He confiscated Mr. Guzman's driver's license and instructed the appellees to follow him to the Sheriff's office, some four miles away. Once at the Sheriff's office, Mr. Guzman and Trooper Byrd remained with the vehicle, while the other passengers went inside the Sheriff's office. A K-9 unit arrived, and the dog alerted to the gas tank area of the truck. Trooper Byrd informed Mr. Guzman that he

---

1. Appellees' cases involve identical facts and questions of law, and are therefore considered in a single opinion. Tex.R.App. P. 90(a).

2. Tex. Health & Safety Code Ann. § 481.121 (Vernon Supp.1997).

3. At the suppression hearing, Trooper Byrd stated that "SO" stands for "sheriff's office," and that it is an abbreviation he typically uses, although other people might think it means something else. However, the trial court found that the Guzmans voluntarily consented to follow Byrd to the Sheriff's office and have their vehicle inspected there.

believed there was contraband in the gas tank area of the truck, and that he was going to take the truck to a nearby service station where he could remove the bed and gain entry to the gas tank. While appellees remained at the Sheriff's office, Byrd drove the truck to a nearby service station, where the bed of the truck was removed. Trooper Byrd then noticed a patch of "bondo" on the gas tank of the truck. Using a mallet and chisel, he broke through the patch and discovered thirty-nine pounds of bundled marihuana in a compartment in the gas tank.

Appellees filed a pretrial motion to suppress all evidence seized as a result of the search and seizure, including any written or oral statements they may have made. Appellees argued that the search of their gas tank exceeded the scope of the consent they gave Trooper Byrd. The trial court granted the appellees' motion to suppress.

During the suppression hearing, Trooper Byrd stated that he believed he had probable cause to arrest appellees out on the highway. He stated that "for all intents and purposes" Mr. Guzman was under arrest when they left the highway and drove to the Sheriff's office. Trooper Byrd testified that he found probable cause to arrest in the combination of the conflict in appellees' stories, the fact that they had recently purchased a truck even though they were unemployed, the presence of a cellular telephone and CB radio in the truck, the disturbed bolts in the truck bed, and a change in Mr. Guzman's attitude when he was questioned about drugs.

In its sole point of error, the State argues that the trial court erred in suppressing the evidence because Trooper Byrd had probable cause to believe the vehicle was carrying contraband and the facts indicated that the bed of the truck had recently been removed. The State argues that appellees' consent was superfluous once Trooper Byrd determined that he had probable cause to search the truck. The State notes that, once law enforcement officers have probable cause to search a vehicle at the scene of a traffic stop, they may do so later at the police station without first obtaining a warrant, citing *Cardenas v. State*, 857 S.W.2d 707 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

Once Trooper Byrd had probable cause to believe that contraband was secreted in the bed and gas tank area of the truck, the State argues, he had the authority to remove the bed of the truck and subsequently break through the bondo seal on the gas tank in an effort to determine whether contraband was in fact present. The State cites *Christopher v. State*, 639 S.W.2d 932 (Tex.Crim.App.1982) and *McCall v. State*, 540 S.W.2d 717 (Tex. Crim.App.1976).

We do not find the State's argument persuasive.

A trial court's ruling on a motion to suppress evidence is reviewed for an abuse of discretion. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Crim.App.1993); *Rivera v. State*, 808 S.W.2d 80, 96 (Tex.Crim.App.1991). When reviewing such a ruling, we view the evidence in the light most favorable to the trial court's ruling. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Davis v. State*, 829 S.W.2d 218, 220 (Tex.Crim.App.1992); *State v. Mireles*, 904 S.W.2d 885, 887 (Tex.App.—Corpus Christi 1995, pet. ref'd).

The trial court is the sole judge of the credibility of the witnesses and the weight of their testimony at a suppression hearing. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). An appellate court should not engage in its own factual review. *Banda v. State*, 890 S.W.2d 42, 51 (Tex.Crim.App. 1994). Instead, we consider only whether the trial court improperly applied the law to the facts. *Id.* If the record supports the trial court's findings, we will not disturb those findings. *Id.* (citing *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991)).

In the present case, the trial court issued the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

\* \* \* \* \* \*

The Court finds the defendants were occupying a Ford Ranger pickup on May

27, 1995, and were stopped in San Patricio County by Officer Jerry Byrd.

The Court finds that the officer making the stop reasonably believed and it was later determined, the defendants were operating a vehicle with illegal window tinting.

This observation by the officer justified the defendants' initial detention.

Through his conversation with the defendants the officer received or observed the following:

1. a mobile telephone in Blanca Guzman's purse.
2. determined Mr. Guzman was employed.
3. determined Mrs. Guzman was unemployed.
4. a portable radio or a portable CB in the vehicle.
5. determined a discrepancy in the defendants' statements concerning where they were going to reside in Houston, Texas.
6. observed a disturbed bolt in the bed of the pickup.
7. observed a noticeable change in the driver's attitude when drugs and drug offenses were mentioned.

After this information came into the officer's knowledge he requested a consent to search the vehicle and its baggage and contents. Mr. Guzman, the operator of the vehicle consented. Mrs. Guzman did not object.

The officer felt he had probable cause to believe the vehicle contained a controlled substance and had the authority to arrest the defendants. The defendants were not made aware of the officer's subjective opinion.

The Court finds the officer did not have probable cause to arrest the defendants at that time, but does not address that issue as the defendants voluntarily agreed to return to the Sheriff's office for a search of their vehicle.

At the Sheriff's Department a drug dog "alerted" to the passenger's side of the vehicle near the gas tank.

No evidence was introduced by the State to establish whether the contents of the pickup bed were still in the truck when the dog alerted. It is therefore unclear to the Court whether the dog alerted to the pickup or the contents in the back of the bed of the pickup.

At the Sheriff's Department the defendant, Eloy Guzman, was advised the bed of the pickup truck would be removed and he made no objection thereto. Mr. Guzman did not escort the officers to the garage where the bed was removed and therefore could no longer consent nor object to the officers activity.

No testimony was ever introduced at the Pre–Trial hearing to establish that the contents of the pickup truck contained any controlled substance.

The Court finds that when the bed of the pickup truck was removed, "bondo" was located on the top of the pickup's gas tank suggesting the presence of a secret compartment therein.

The Court further finds that the officer used a rubber mallet and brass chisel to *tear* a hole in the top of the vehicles gas tank.

The Court finds that the entry into the gas tank by the officer was occasioned by the probable cause.

The Court further finds, however, that the entry into the gas tank exceeded the scope of the consent authorized by the defendant in that any entry into the gas tank of a vehicle renders a vehicle inoperable and necessitates significant repairs before said vehicle can be safely operated.

Based upon the foregoing the Court finds the officer legally stopped the vehicle, the defendants agreed to return to the Sheriff's Department, the officer had probable cause to search the vehicle but the officer's search exceed [sic] the scope of consent given.

The Court finds that even though the officer possessed probable cause to search the vehicle that Article 1, Section 9 of the Texas Constitution and Fourth Amendment of the United States protects the gas tanks of the vehicle from being torn apart

by Law Enforcement Officers unless armed with a search warrant.

The Court finds this search took place on May 27, 1995. Since the search necessitated damaging property and rendering the Defendant's vehicle unsafe and inoperable for an indefinite period of time, a search without a warrant was unreasonable and the fruit of same are suppressed.

■ Whether a search or seizure is reasonable under the Fourth Amendment is an issue of law that the appellate court reviews *de novo*. *Higbie v. State*, 780 S.W.2d 228, 230 (Tex.Crim.App.1989); *Gonzalez v. State*, 869 S.W.2d 588, 591 (Tex.App.—Corpus Christi 1993, no pet.). If a search or seizure is conducted without a warrant, it is presumed to be unreasonable, and the burden shifts to the State to prove its reasonableness. *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim.App.1986).

■ A warrantless search must be strictly circumscribed by the exigencies which justify its initiation. *Bass v. State*, 732 S.W.2d 632, 635 (Tex.Crim.App.1987). The warrantless search of an automobile hinges on two factors: (1) probable cause and (2) exigent circumstances. *See Gauldin v. State*, 683 S.W.2d 411, 414 (Tex.Crim.App.1984). We agree with the trial court that Trooper Byrd did not actually have probable cause to search appellees' vehicle on the roadside, his subjective feelings notwithstanding. However, the trial court determined that the Guzmans voluntarily consented to travel to the Sheriff's office and have their vehicle searched there. We will not disturb this fact finding. Once at the Sheriff's office, the K–9 dog "alerted" to the gas tank area of the Guzmans' vehicle. When a peace officer possesses probable cause that a motor vehicle contains contraband or the instrumentalities of a crime, a valid search can be conducted in the area of the vehicle where the facts justify the officer's belief that such evidence is there concealed. *See Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Gill v. State*, 625 S.W.2d 307 (Tex.Crim.App.1981); *Borner v. State*, 521 S.W.2d 852 (Tex.Crim.App. 1975). We agree with the trial court that

once the drug dog alerted, Trooper Byrd had probable cause to search the vehicle for contraband, and that the removal of the pickup bed and the appearance of the gas tank gave him probable cause to enter into the gas tank.

■ However, probable cause is not the sole factor to be considered. In order to conduct a warrantless search, there must be not only probable cause but also exigent circumstances. In general, because a car is mobile, it may be lawfully searched without a warrant if the search is supported by probable cause to believe that the vehicle contains contraband or the instrumentalities of a crime. *Chambers*, 399 U.S. at 47–52, 90 S.Ct. at 1979–82; *Delgado v. State*, 718 S.W.2d 718, 722 (Tex.Crim.App.1986); *Bustamante v. State*, 917 S.W.2d 144, 146 (Tex. App.—Waco 1996, no pet.) However, in the present case the car was no longer subject to being moved without the permission of law enforcement personnel. The vehicle was in the "sallyport" area behind the Sheriff's office in Sinton when the drug dog alerted. The Guzmans were not present at the service station when Trooper Byrd removed the truck bed and broke into the gas tank, but were rather at the Sheriff's office. Trooper Byrd testified that the Guzmans were not free to leave, although they were not formally arrested until after the marihuana was discovered. Once the drug dog alerted, Trooper Byrd could easily have obtained a search warrant, but he failed to do so. "[A vehicle] while in police custody could not be subject to the moving vehicle exception of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)." *Maldonado v. State*, 528 S.W.2d 234, 240 (Tex.Crim.App. 1975). We hold that, in the present case, there were no exigent circumstances present allowing Trooper Byrd to break into the gas tank of the vehicle without first obtaining a search warrant.

■ We do not believe that this case involves a single "continuous happening," as was the case in *Borner*, 521 S.W.2d at 856–57, and *Taylor v. State*, 421 S.W.2d 403 (Tex. Crim.App.1967). In both *Borner* and *Taylor*, the Court of Criminal Appeals upheld the

warrantless post-arrest search of the defendant's vehicle, at a place different from the traffic stop and out of the defendant's control, because the officers involved had probable cause to arrest the defendants for traffic violations and to search the defendants' vehicles at the roadside. *See Borner*, 521 S.W.2d at 855–56; *see also Taylor*, 421 S.W.2d at 406–07 (opinion on appellant's motion for reh'g). As stated in *Taylor*, the arrests were valid "and [were] merely the beginning of the unraveling of the legal ball of twine." *Taylor*, 421 S.W.2d at 407. In the present case, however, the trial court determined that Trooper Byrd did not have probable cause to arrest the Guzmans at the time of the roadside stop. It was only because of their consent to follow Trooper Byrd to the Sheriff's office in Sinton that probable cause to search the vehicle developed. Once at the Sheriff's office, Mr. Guzman was separated from the vehicle and was no longer able to protest the officers' dismantling of the pickup truck and breaking into the gas tank, rendering it undriveable. We find the case of *Maldonado* to be more closely on point. In *Maldonado*, the Court of Criminal Appeals determined that evidence should be suppressed when it was discovered during a general search of the vehicle at a different place from where the defendant was arrested, and while the defendant was in custody. *Maldonado*, 528 S.W.2d at 239–41. In that case, the Court of Criminal Appeals determined that "[t]he State's failure to obtain a search warrant cannot be excused." *Id.* at 239. We believe the same to be true in the present case.

Under the present circumstances, we cannot say that the trial court abused its discretion in suppressing the evidence. Appellant's sole point of error is overruled. The trial court's order suppressing the evidence is AFFIRMED.