Charles Donald Clark v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-379-CR

     CHARLES DONALD CLARK,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 213th District Court
Tarrant County, Texas
Trial Court # 0650047D
                                                                                                                

O P I N I O N
                                                                                                                

      This is an appeal by Appellant Clark from his conviction for murder, enhanced by one prior
felony conviction, for which he was sentenced to 99 years in the Institutional Division of the Texas
Department of Criminal Justice.
      Appellant and Ronnie Martin were at the home of Judy Henderson near Lake Worth on
January 29, 1997. Martin's aunt, Marie Bell, had left the house that day to stay at a nearby motel. 
George Wetzel called the house and asked Martin if anyone there was interested in purchasing
drugs. Martin told Wetzel that Appellant was interested. Wetzel asked if Appellant could pay. 
Appellant opened his wallet and Martin saw what he thought was money and then told Wetzel that
Appellant could pay. Wetzel found out later that Appellant had placed "fake" money between bills
of real money to appear he had a large amount of cash. After the phone call Appellant asked
Martin for a .38-caliber revolver which Martin had been holding for him. Martin gave the gun
back to Appellant.
      Wetzel arrived at the Henderson house a short time later with Carol Lilly. Wetzel and Lilly
met with Appellant and Martin in Henderson's living room. Wetzel showed the drugs to
Appellant. Martin, Lilly and Appellant injected a substance and then Martin went outside to
Wetzel's car to get some clothes he was keeping there.
      After the three had tried the drugs Wetzel apparently demanded payment. Instead of paying,
Appellant put the gun to Wetzel's head and pulled the trigger. Wetzel died instantly.
      Henderson was talking to Bell on the telephone when the shot rang out. Bell heard Appellant
say, "Bitch, sit down." Henderson dropped the telephone. Bell called her back immediately. 
Henderson answered and told Bell, "Charlie (Appellant) just shot George."
      Martin was outside when the shot occurred. Henderson and Lilly came outside the house
hysterical and screaming. Appellant then came outside and he and Martin went back into the
house. Martin saw Wetzel had been shot and lying on the floor. He saw Appellant go to Wetzel's
body, put the gun in Wetzel's blood, and then place the gun in Wetzel's hand as if Wetzel had shot
himself.
      Appellant and Martin left in Wetzel's car. Appellant suggested that Martin say that Wetzel
had tried to rob him and that the gun went off as they were fighting.
      When the police arrived at Henderson's house they found Wetzel's body on the floor in the
living room. A 38-caliber gun was in his hand and fake and real money was scattered around the
body. A white powdery substance was also nearby.
      Officer Phillips noticed a yellow Subaru outside (Appellant's car). She looked through the
window of the car and saw baggies of a white-powdery substance. Opening the door, she looked
for owner registration papers which she did not find. She informed Detective Reyes, the crime
scene officer, about the car.
      Detective Reyes, who had arrived at the crime scene, observed Wetzel's body, the nearby fake
and real money, and a white powder. He also looked through the window of the Subaru and saw
fake money identical to that he saw near Wetzel's body. The car was impounded and a search
warrant obtained for it. Inside police found fake money, medical syringes, a small plastic bag
containing a white residue, and a scale. Appellant was arrested and gave a statement claiming the
gun went off while he and Wetzel struggled. Ballistic tests confirmed Appellant's 38-caliber gun
had fired the bullet that killed Wetzel.
      Appellant was indicted for the murder of Wetzel, with an alleged prior felony conviction for
enhancement, tried and convicted by a jury which found the enhancement "true" and sentenced
him to 99 years in prison.
      Appellant does not challenge the legal or factual sufficiency of the evidence. He appeals on
three points of error.
      Point one: "The trial court erred in overruling Appellant's motion to suppress the evidence
seized from the yellow Subaru automobile because the affidavit supporting the search and arrest
warrant did not show probable cause sufficient to justify issuance of the warrant in violation of the
Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, Article 1, Sections 9,
10 and 19 of the Texas Constitution, and Texas Code of Criminal Procedure Article 38.23."
      A search warrant may be issued by a judge if, given all the circumstances set forth in the
affidavit presented to him, there is a fair probability that contraband or evidence of a crime will
be found in the place to be searched. Johnson v. State, 803 S.W.2d 272, 288 (Tex. Crim. App.
1990), cert. denied, 111 S.Ct. 2914 (1991).
      In this case the search warrant affidavit stated that a crime had been committed; that Officer
Reyes observed fake bills and a white powdery substance around Wetzel's body; that the
automobile was parked at the crime scene; that the car belonged to Appellant and that Reyes
observed from the outside of the car imitation money matching that found by Wetzel's body.
      The search warrant was supported by probable cause contained in the affidavit. A crime had
been committed. The car was parked on the property of the crime scene and was in lawful police
custody. A warrantless search of the car would have been justified under these facts. The officers
could have performed a legal warrantless search under the automobile exception to the warrant
requirement. Amos v. State, 819 S.W.2d 156, 161 (Tex. Crim. App. 1991); State v. Guzman, 959
S.W.2d 631, 633 (Tex. Crim. App. 1998).
      Point one is overruled.
      Point two: "The trial court committed reversible error by permitting the State, over defense
objection, to elicit inadmissible hearsay from Police Officer Fred Gilbert


 regarding statements
made by a witness present at the scene of the crime."
      Point three: "The trial court committed reversible error by permitting the State, over defense
objection, to elicit inadmissible hearsay from State's witness, Marie Bell, regarding statements
made by a witness present at the scene of the crime."
      Point two appears to focus on the testimony John McGee, "that there had been an argument
in Judy Henderson's house; and that someone had been shot and was still inside the house." 
Appellant objected on the ground of hearsay and the trial court overruled the objection.
      Officer McGee testified that Judy Henderson made this statement; that she was hysterical
when he spoke with her; that she was crying, yelling, going on a tangent—she seemed very irate
or upset that something traumatic had just happened.
      The trial court did not abuse its discretion in admitting the evidence because Henderson's
statements were excited utterances and as such were exceptions to the hearsay rule. Tex. Rules
of Evid. 803(2), Hearsay Exceptions; Lawton v. State, 913 S.W.2d 542, 553 (Tex. Crim. App.
(1995).
      Marie Bell testified that during her phone conversation with Henderson she heard a loud noise
that sounded like a gun shot and then Henderson dropped the phone. She also heard Appellant in
the background say, "Bitch, sit down." Bell immediately called Henderson back. She testified
that Henderson said that "Charlie just shot George and that she had to get help." Bell further
testified that Henderson seemed to be in shock and sounded shaky when she made the statements. 
Objection to this testimony was overruled by the court.
      Again, the trial court did not abuse its discretion in admitting Bell's testimony. Rule 803(2),
supra; Lawton, supra.
      Points two and three are also overruled. The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed September 9, 1998
Do not publish