

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-70,963-02

## EX PARTE JUAN RAMON MEZA SEGUNDO, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. C-3-W011370-0974988-B
### IN CRIMINAL DISTRICT COURT NUMBER THREE
### FROM TARRANT COUNTY

NEWELL, J., filed a concurring opinion in which HERVEY and KEEL, JJ., joined.

We have already recognized that the United States Supreme Court's death-penalty test for determining intellectual disability does not answer whether an intellectually disabled capital murderer fits into that category of offenders whose moral blameworthiness is lessened by their

intellectual disability.[1]  The test, or at least the floor for the diagnostic criteria, has become untethered from the rationale for that test set out in *Atkins v. Virginia*.[2]  This defendant, a serial killer who brutally raped and murdered eleven-year-old Vanessa Villa (as well as two other women while the Villa murder remained unsolved), could not provide a clearer example of the Supreme Court's intellectual failure.  Segundo does not fit the mold that the Supreme Court used to justify the intellectual disability exemption from the death penalty.[3]

Nevertheless, the United States Supreme Court has held that the execution of intellectually disabled defendants violates the Eighth

---

[1] *Petetan v. State*, 622 S.W.3d 321, 332 (Tex. Crim. App. 2021) ("At its core, [*Atkins v. Virginia*] seems to rest its justification for a death-penalty exemption on the assumption that intellectual disability is a character trait that lessens moral culpability and so the retributive value of punishment.  But the clinical criteria for diagnosing someone with intellectual development disorder seems to look forward to how the diagnosis can better assist the individual function in society without regard to any consideration of moral blameworthiness.").

[2] *See, e.g.*, *Ex parte Wood*, 568 S.W.3d 678, 686 (Tex. Crim. App. 2018) (Newell, J., concurring) ("But to the extent that Applicant can build a claim of intellectual disability upon the shifting sands of clinical psychological standards detailed in [*Moore v. Texas*], this case demonstrates that the determination of intellectual disability has become untethered from the original rationale for the exception to the imposition of the death penalty announced in [*Atkins v. Virginia*].").

[3] *Atkins v. Virginia*, 536 U.S. 304, 318 (2002) ("[Intellectually disabled] persons frequently know the difference between right and wrong and are competent to stand trial.  Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others.  There is no evidence that they are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan, and that in group setting they are followers rather than leaders.  Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability.").

Amendment prohibition against cruel and unusual punishment.[4]  When we decide cases involving the United States Constitution, we are bound by United States Supreme Court case law interpreting it.[5]  If we disagree with the Court's holding, too bad.  It is up to the United States Supreme Court to fix it, not us.

In this case, Applicant presented some evidence of his intellectual disability during his trial, but he was denied a specific jury instruction on the issue.  In his first habeas application, Applicant raised a claim regarding intellectual disability.  The trial court made findings and conclusions regarding Applicant's claims based in part upon the criteria we set out in *Ex parte Briseno*.[6]  We deferred to those findings and denied relief.[7]  The United States Supreme Court subsequently made clear in *Moore v. Texas* that we cannot rely upon the test set out in *Briseno* because it violates the federal constitution.[8]  Applicant filed a

---

[4] *Atkins*, 536 U.S. at 321.

[5] *See State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998); *see also* United States Const. Art. VI, cl. 2; *see also Marbury v. Madison*, 5 U.S. 137, 146 (1803) ("This is the *supreme* court, and by reason of its supremacy must have the superintendence of the inferior tribunals and offices whether judicial or ministerial.").

[6] *See Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), *abrogated by Moore v. Texas*, 137 S. Ct. 1039, 1044 (2017).

[7] *Ex parte Segundo*, No. WR-70,963-01, 2010 WL 4978402 (Tex. Crim. App. Dec. 8, 2010) (not designated for publication).

[8] *Moore v. Texas*, 137 S. Ct. 1039, 1044 (2017) (holding that the *Briseno* factors may not be used to restrict the qualification of an individual as intellectually disabled).

subsequent writ application based upon *Moore*, and we remanded the case for the habeas court to resolve Applicant's claim of intellectual disability.[9]

Applying the standard set out in *Moore*, the habeas court resolved Applicant's claim in his favor. The habeas court made factual findings to support its conclusion that Applicant is intellectually disabled under *Moore*. Those findings are supported by the record.[10] The State does not contest those findings and agrees that it cannot execute Applicant due to his intellectual disability. Applicant is entitled to relief under Supreme Court precedent, and the Court correctly grants it. We've already seen what happens when we ignore the Supreme Court on this issue.[11]

With these thoughts, I join the Court's order.

Filed: May 25, 2022

---

[9] *Ex parte Segundo*, No. WR-70,963-02 (Tex. Crim. App. Oct. 31, 2018) (not designated for publication).

[10] *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) (noting that we defer to and accept a trial judge's findings of fact and conclusions of law in post-conviction habeas review when those findings and conclusions are supported by the record).

[11] *Moore*, 137 S. Ct. at 1044 (*Moore I*); *Moore v. Texas*, 139 S. Ct. 666, 672 (2019) (*Moore II*).

Publish